IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROCK FERRONE,

       Appellant,                        14-cv-01314

                                       **ELECTRONICALLY FILED**

       v.

NATALIE LUTZ CARDIELLO, as Chapter 11 Trustee,

       Appellee.

**MEMORANDUM ORDER**

Presently before the Court is an Emergency Motion to Stay Sale Pending Appeal ("Motion") filed by Rock Ferrone ("Ferrone") at 3:00 p.m. on September 25, 2014. Doc. no. 1. In light of the fact that the sale referenced in Appellant's filing was to take place on Tuesday, September 30, 2014, this Court Ordered that Appellee file a Response to the Motion to Stay Sale by 10:00 a.m. on September 26, 2014. This Court construes Ferrone's instant motion as a Motion for Preliminary Injunction.

This Court is very familiar with the underlying circumstances surrounding the key issue presented herein, having already issued other appellate decisions which have stemmed from the underlying bankruptcy case. See Bankruptcy Case no. 09-23155-CMB, and District Court Case nos. 14-cv-00085, 14-cv-00086, 14-cv-00091, and 14-cv-01105. Thus, the Court endeavored to resolve the instant matter as expeditiously as possible to preserve the rights of all of the Parties.

**I. Standard Of Review**

Bankruptcy Rule of Procedure 8005 states in relevant part:

**Rule 8005 Stay Pending Appeal**

A motion for a stay . . . of the order . . . of a bankruptcy judge . . . for other relief pending appeal must ordinarily be presented to the bankruptcy judge in the first

> instance. . . . A motion for such relief, or for modification or termination of relief granted by a bankruptcy judge, may be made to the district court or the bankruptcy appellate panel, but the motion shall show why the relief, modification, or termination was not obtained from the bankruptcy judge. . . .

B.R. 8005 (2014) (emphasis added). Assuming that the movant can adequately show why a motion for relief was not first made to the Bankruptcy Court, the movant must establish four elements in order to obtain a stay of a Bankruptcy Judge's Order under Rule 8005.

To obtain a stay, the movant must establish the four elements: (1) a strong likelihood of success on the merits; (2) the movant will suffer substantial irreparable injury if the stay is denied; (3) substantial harm will not be suffered by the other parties if the stay is granted; and (4) issuance of the stay would not harm the public interest. *In re Scarborough* 389 Fed. Appx. 184 (3d Cir. 2010); *In re Bankruptcy Appeal of Allegheny Health, Educ. and Research Foundation*, 252 B.R. 309, 321 (W.D. Pa. 1999); see also *In re Malat Irrevocable Trust,* 2009 WL 5206185, *1 (D.N.J. Dec. 21, 2009).

**II.    Background**

Appellant, having been denied his request to stay the sale of assets by the Bankruptcy Court, has now filed the instant Motion asking this Court to stay the sale of assets in a chapter 11 bankruptcy case – a case which began on April 30, 2009, the date that Rock Airport of Pittsburgh, LLC ("RAP") filed its voluntary petition for relief. RAP is the owner of an airport in Tarentum, Pennsylvania, and Appellant in the immediate case ("Ferrone') is the sole owner of RAP.

Much of the prior litigation which has acquainted this Court with the underlying facts necessary to decide the instant Emergency Motion to Stay Sale, arose from the dispute(s) between Management Science Associates, Inc. ("MSA") and RAP / Ferrone. These facts are

well documented in this Court's prior decisions set forth in the above-referenced cases and will not be reiterated here given the parties familiarity with them, this Court's familiarity with them, and the need to expedite this Order in the interests of justice.

Most recently, but prior to the instant Emergency Motion being filed, this Court was assigned to two appellate matters: case no. 14-cv-1195 and 14-cv-1196, both of which incepted by the filing of Notices of Appeal by RAP. Those appeals sought this Court's review of two of the Bankruptcy Court's Orders, both dated August 8, 2014, filed at doc. nos. 830 and 832. These August 8, 2014 Bankruptcy Court Orders, related to RAP's "Objection to Claim No. 3 of [MSA], transferee of the Priscilla Grdn Living Trust Claim" (doc. no. 830), and RAP's "Expedited Motion for Limited Reconsideration of Order Approving Amended Disclosure Statement of [MSA]" (doc. no. 832).

The first of the two prior Bankruptcy Court Orders (doc. no. 830) which RAP appealed to this Court (docket no 14-cv-1196), noted that a claim owned by Priscilla Grden Living Trust ("Trust"), was transferred to MSA. RAP objected to this transferred claim on June 9, 2014, shortly after its transfer to MSA, despite the fact that the claim had been filed by the Trust on June 8, 2009. Purportedly, the transfer of the Trust claim to MSA provided MSA with standing to object to RAP's proposed plan of reorganization as well as standing to file its own plan. The Bankruptcy Court overruled RAP's Objection to the transferred claim which had the effect of endowing MSA with standing to object to RAP's proposed reorganization plan and file its own plan.

The second of the two prior Bankruptcy Court Orders (doc. no. 832) which RAP appealed to this Court (docket no 14-cv-1195), denied RAP's Motion for Limited Reconsideration of the Order which approved MSA's Amended Disclosure Statement. RAP had

asked the Bankruptcy Court to reconsider its Order dated July 21, 2014, which approved MSA's "Amended Disclosure Statement to Accompany Plan Dated July 18, 2014" and scheduled a plan confirmation hearing on both MSA's "Amended Plan of Reorganization Dated July 18, 2014" and on the Debtor's "Amended Plan of Reorganization Dated June 20, 2014." The July 21, 2014 Order implicitly determined that MSA had standing to advance its own Plan and RAP's Motion for Reconsideration of that Order, sought clarification as to MSA's standing.

Thus, the two appeals relating to the Bankruptcy Court's Order denying RAP's Motion for Reconsideration (doc. no. 832) and the Bankruptcy Court's Order overruling RAP's Objection to the Trust's claim and the transfer of that claim to MSA (doc. no. 830), challenge the validity of the two Bankruptcy Court Orders, each of which explicitly or implicitly concluded that MSA had standing. RAP and MSA – the Parties to these two appeals presently pending before this court (see docket numbers 14-cv-1195 and 14-cv-1196) – filed a Stipulation with this Court concerning the briefing schedule in each of the two cases (docket numbers 14-cv-1195 and 14-cv-1196) which led this Court to enter a Consent Order in each case in that regard. See doc. nos. 4, 5 filed at docket number 14-cv-1195 and doc. no. 2, 3 filed at docket no. 14-cv-1196.

These Stipulations indicated that the Bankruptcy Court was going to hold a hearing on the confirmation of the sale of assets on September 15, 2014, if a consensual order regarding confirmation of the sale was not submitted first. See doc no. 4, filed at 14-cv-1195; and doc. no. 2, filed at 14-cv-1196. The Bankruptcy docket indicates that the Bankruptcy Court held this confirmation hearing beginning on September 15, 2014 and continued it to September 16, 2014. See Bankruptcy docket 09-23155-CMB, at doc. nos. 1026-1029. On September 16, 2014, the Bankruptcy Court confirmed the Plan filed by Trustee Natalie Lutz Cardiello ("Trustee"). See Bankruptcy docket 09-23155-CMB, at doc. no. 1030. Also on September 16, 2014, the

4

Bankruptcy Court entered an Order Granting Final Approval of Amended Disclosure Statement filed by MSA and Confirming Trustee's Chapter 11 Plan of Liquidation. In addition, on September 16, 2014, the Bankruptcy Court, after holding a hearing on the Trustee's (here, Appellee's) Motion to Sell Property Free and Clear of Liens under Section 363(f), granted the Trustee's Motion. See Bankruptcy docket 09-23155-CMB, at doc. nos. 1036-1037.[1]

---

[1] The relevant events leading up the Bankruptcy Court's approval of the Trustee's Motion to Sell Property Free and Clear of Liens were summarized in Appellee's Response in pertinent part as follows:

- On June 11, 2014, the Trustee filed the Amended Motion to Sell of All or Substantially All of the Debtor's Assets ("Sale Motion") pursuant to the Asset Sale and Purchase Agreement dated and executed on March 6, 2014 and as amended by letter dated June 10, 2014 ("Stalking Horse APA"), by and between the Trustee and Alaskan Property Management Company, LLC ("Alaskan").
- On June 27, 2014, the Bankruptcy Court entered an Order Setting Date Certain for Hearing on Motion to Sell Free and Clear of Liens, fixing the last date for filing objections to the Sale Motion as August 11, 2014.
- On August 21, 2014, the Bankruptcy Court held a hearing in consideration of the Sale Motion, at which time Rock Ferrone ("Ferrone") appeared and orally objected to the Sale Motion, presenting only argument without evidence.
- The Bankruptcy Court overruled Ferrone's objections to the Sale Motion on the record and approved the Sale Motion pending resolution of a claim of ownership made by K-Cor, Inc., d/b/a Rock Built ("K-Cor") to the property situate at 1000 RockPoint Boulevard, Tarentum, Pennsylvania ("Property").
- The Bankruptcy Court held an evidentiary hearing on the K-Cor Objection on September 4, 2014, during which all parties in interest presented evidence.
- During the evidentiary hearing, the Bankruptcy Court heard the testimony of, *inter alia,* Ferrone as it related to K-Cor's claim of ownership of the Property and other various pieces of real and personal property located on, about, or under the Property.
- In its Opinion dated September 10, 2014 ("Opinion"), the Bankruptcy Court overruled the K-Cor Objection, noting that K-Cor "fell woefully short of its burden to produce evidence of sufficient weight and directness to convince this Court that an agreement existed to convey the Property from the Debtor to K-Cor." See Bk. Doc. No. 1017, p. 9.
- The Bankruptcy Court also found that K-Cor, through Ferrone's testimony as K-Cor's principal, failed to establish ownership in any other property to be sold under the Sale Motion. See Bk. Doc. No. 1017, p. 9 ("[T]o the extent [Ferrone] made bald assertions at the evidentiary hearing or in the 2004 Examination that K-Cor has a potential interest in any other property to be sold pursuant to the Sale Motion, ownership by K-Cor has not been established.").
- By Order of Court dated September 10, 2014, for the reasons set forth in the Opinion, the Bankruptcy Court overruled the K-Cor Objection and found that the Debtor owns the Property to be sold under the Sale Motion. [Bk. Doc. No. 1018].
- On September 16, 2014, the Bankruptcy Court entered an Order Approving Sale ("Sale Order"), thereby granting the relief requested in the Sale Motion and confirming the sale of the property identified in the Sale Motion to the Buyer. [Bk. Doc. No. 1037].

Six days later, on September 22, 2014, Ferrone, as an "interested party," filed an Emergency Motion to Stay Sale Pending Appeal with the Bankruptcy Court. See Bankruptcy docket 0923155-CMB, at doc. nos. 1040. On September 24, 2014, the Trustee filed an Objection to Ferrone's Emergency Motion. See Bankruptcy docket 0923155-CMB, at doc. no. 1052.

On September 25, 2014, the Bankruptcy Court denied Ferrone's Emergency Motion to Stay Sale Pending Appeal. See Bankruptcy docket 0923155-CMB, at doc. no. 1065. This denial has led Ferrone to file the instant Emergency Motion to Stay Sale Pending Appeal with this Court.

**III. Discussion**

As indicated above, both RAP and MSA had filed competing Plans of Reorganization with the Bankruptcy Court. RAP challenged MSA's standing to file a Plan of Reorganization, and further objected to MSA's purchase of a claim originally held by "Priscilla Grden Living Trust" (the "Trust"), which purportedly provided MSA with a basis to assert. RAP appealed the Bankruptcy Court's decision which held that MSA did possess standing to file a Plan of Reorganization (case no. 14-cv-1195), and simultaneously filed an appeal from the Bankruptcy Court's decision to allow MSA to buy the claim originally held by "Priscilla Grden Living Trust" (case no. 14-cv-1996).

The stipulations filed in each of these cases (14-cv-1195 and 14-cv-1196) indicated that the sale of Rock Airport's assets had been approved, but not yet confirmed, by the Bankruptcy

---

The Trustee's Response to the instant Emergency Motion also alleged that on "September 22, 2014, Ferrone filed: 1) a Notice of Appeal of the Bankruptcy Court's Order overruling the K-Cor Objection to the Sale Motion ("K-Cor Appeal") to the United States District Court for the Western District of Pennsylvania ("Court") [Bk. Doc. No. 1044] . . . ." The Court notes that there is no record of such an Appeal actually being filed with the United States District Court for the Western District of Pennsylvania, despite the fact that a Notice of Appeal appears on the Bankruptcy Court Docket.

6

Court. These stipulations also indicated that a confirmation hearing was scheduled to begin on September 15, 2014 (if a consensual order regarding the confirmation of the sale could not first be reached), and that the Bankruptcy Court's confirmation of the sale would render the two District Court appeals moot (meaning the appeals filed at case nos. 14-cv-1195 and 14-cv-1196).

Turning to the submissions presented in the instant matter (14-cv-1314), Ferrone argues that the Trustee plans to sell the assets to "Alaskan Property Management Company, LLC" ("Alaskan"), which Ferrone claims "upon information and belief" is an "affiliate" of MSA. Doc. no. 1, ¶8. Ferrone contends that Alaskan is not a good faith purchaser because its "affiliate," MSA, colluded ten years ago with the real estate agent at the airport "to intentionally not sell property on Ferrone's behalf." Id., ¶ 9. Ferrone also argues that the Rock Built Building is being included in the sale of assets that Ferrone claims he owns through one of his entities, K-Cor, Inc., d/b/a Rock Built. Id., ¶ 10.

Ferrone indicates that on September 10, 2014, the Bankruptcy Court found that the Rock Built Building was property of the bankruptcy estate, and thus, could be included in the assets to be sold be the Trustee. Id., ¶ 11; see also, Bankruptcy Court docket no 09-23155, doc. no. 1018; see also, footnote 1, above. Ferrone indicates that he appealed this September 10, 2014 Order, along with the Bankruptcy Court's September 16, 2014 Order (doc. no. 1037) – wherein the Bankruptcy Court Approved the Sale of RAP's assets clear and free from liens, claims and encumbrances ("Sale Order") – to this Court. Id., ¶ 13. As discussed at length above, this Court has decided (or is presently awaiting briefing on two other appeals related to this bankruptcy), but none of the appeals filed here have questioned the Bankruptcy Court's Orders related to the Rock Built Building issue (doc. no. 1018) nor the Sale of Assets (doc. no. 1037). Thus, this

Court must adjudicate the instant matter based solely on the issue and information placed squarely before it.

Turning to the preliminary injunction four-part test, which this Court must utilize to ascertain whether an Emergency Stay of Sale is warranted, this Court finds, that Ferrone can meet none of the criteria listed.

First, there is not a strong likelihood that Ferrone will succeed on the merits. Importantly, Ferrone's Emergency Motion does very little to support the proposition that he will succeed on the merits. See doc. no. 1. Ferrone essentially advances two reasons why the sale should be delayed: (1) his 10-year-old dispute with MSA, who is "affiliated" with Alaskan – and this fact is based on Ferrone's own "information and belief;" and (2) that the bankruptcy estate should not include Rock Built Building. Ferrone provides nothing further in support of his first reason why the sale should be delayed. The Court notes that one, if not both, of the other appeals currently pending before this Court (see docket numbers 13-cv-1195 and 13-cv-1196), may touch upon this issue, but the Court also notes that the parties to those appeals filed a stipulation whereby they agreed to allow this process to move forward first. Moreover, this Court questions whether Ferrone has any "interest" in these proceedings as it was determined by the Bankruptcy Court on September 10, 2013, that the that the Rock Built Building was property of the bankruptcy estate (see doc. no. 1018 in Bankruptcy Court docket 09-21355), and therefore subject to the asset sale Ferrone now seeks to halt. As noted, this Court has no record of Ferrone filing an appeal with this Court of the Bankruptcy Court Order nos. 1018 or 1037. Thus, given the lack of support for his position that he will succeed on the merits, and given the evidence to the contrary, the Court finds that Ferrone cannot meet the first criterion.

Second, while this Court acknowledges that Ferrone claims he will suffer irreparable harm if the stay is denied – presumably the sale of the Rock Built Building – the Bankruptcy Court has already determined that the Rock Built Building is property of the bankruptcy estate, and thus, can be included in the assets to be sold. Bankruptcy Court docket no 09-23155, doc. no. 1018, dated September 10, 2014. The Bankruptcy Court also approved the sale of RAP's assets clear and free from liens, claims and encumbrances, after conducting fact-finding hearings. Bankruptcy Court docket no 09-23155, doc. no. 1037, dated September 16, 2014. No appeals of these two Orders were filed this Court despite attestations to the contrary. Thus, the only facts presently before this Court is that the Bankruptcy Court made factual findings concerning whether the Rock Built Building was estate property, issued an Order in that regard, and no one has challenged that decision. Given Ferrone's ability to file and present his case in a cogent manner the instant Emergency Motion to Stay Sale, the Court finds that Ferrone could have filed the appeal(s) but chose not to so. Thus, this Court finds that Ferrone has failed to demonstrate to this Court how he will suffer any harm, let alone the requisite substantial, irreparable harm required by law.

Moreover, as noted by the Bankruptcy Court and this Court (see above), Ferrone knew that the sale of the assets clear and free from liens, claims and encumbrances – which included the Rock Built Building per Bankruptcy Court Order at docket entry number 1018, entered on September 10, 2014 – had been approved by the Bankruptcy Court as of dated September 16, 2014. Nonetheless he waited nearly a week, until September 22, 2014, to file an "Emergency Motion" to stay the sale of those assets with the Bankruptcy Court. This Court, like the Bankruptcy Court, questions Ferrone's good faith in waiting so long to file such a Motion.

9

Third, substantial harm will most certainly be suffered by the other parties if the stay is granted. As noted above, this bankruptcy case was initiated in 2009, and it has only moved toward a resolution in the past year when the Trustee began to pursue the sale of the estate's assets. The Trustee's Response to Ferrone's Motion indicates that "all other parties will suffer substantial harm if this Court grants the stay because all parties in interest, excluding Ferrone, will substantially benefit from closing on the sale pursuant to the Sale Order." Doc. no. 2, ¶ 36. The Trustee's Response further explains that Staying the Sale only further delays the time before creditors can receive payment on account of their claims. The Court concurs with this assessment based on the following information, also provided by the Trustee: the Trustee's Response explained that the Trustee, Huntington, and Alaskan, the Stalking Horse APA will expire on September 30, 2014. In addition, Huntington has commenced a foreclosure action that remains pending in the Allegheny County Court of Common Pleas at GD-13-009195. If this Court were to Stay the Sale as requested by Ferrone, Huntington could refuse to extend the Stalking Horse APA and proceed with the foreclosure, thereby risking an offer of $9 million "for the property to be sold under the Sale Motion for an undoubtedly lesser amount to be realized in a sheriff's sale." Doc. no. 2. ¶36. Ferrone does not mention this – let alone dispute this -- in his submission to this Court. See doc. no. 1.

Fourth, this Court finds that Ferrone failed to assert any argument related to the public interest. However, as noted by the Trustee in her Response, the sale of the assets will satisfy the claims of creditors and the sale proceeds will also be applied to satisfy the past due taxes owed on RAP's property. The Trustee also notes that it is possible that the sale "will also likely facilitate development in the area, which has stalled during the pendency of this bankruptcy

case." See doc. no. 2, ¶ 39. The Court finds the public interest is advanced by the sale, and would be harmed by a stay.

Based on the foregoing law and authority, this Court finds that there is no basis upon which to grant the stay sought by Ferrone.

**ORDER**

AND NOW, this 29th day of September, 2014, it is hereby ORDERED that Ferrone's Emergency Motion to Stay Sale Pending Appeal is DENIED. The Sale may proceed as scheduled.

s/ Arthur J. Schwab  
Arthur J. Schwab  
United States District Court Judge

cc: All Registered ECF Counsel and Parties